CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiff
Hunter Killer Productions, Inc.,

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Hunter Killer Productions, Inc., )<br><br>              Plaintiff, )<br>     vs.<br><br>GERARD GALIOS,<br>JOHN QUIROZ, and<br>JOHN DOE<br><br>              Defendants. )<br> ) ) ) ) ) ) ) ) ) ) ) ) | **Case No.: 1:19-cv-327**<br>(Copyright)<br><br>**COMPLAINT; EXHIBITS 1-2**<br><br>**(1) DIRECT COPYRIGHT<br>    INFRINGEMENT**<br><br>**(2) CONTRIBUTORY<br>    COPYRIGHT<br>    INFRINGEMENT** |

## <u>COMPLAINT</u>

Plaintiff Hunter Killer Productions, Inc. files this Complaint against

Defendants GERARD GALIOS, JOHN QUIROZ and JOHN DOE and alleges as

follows:

### I.      NATURE OF THE ACTION

20-017D

1.     This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.     The Plaintiff alleges that Defendants are liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and, (2) contributory copyright infringement.

## II.     JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.     Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.  As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents reside or may be found in this District.

20-017D

## III.   PARTIES

### A.   The Plaintiff, Hunter Killer Productions, Inc.

6.     The Plaintiff Hunter Killer Productions, Inc. ("Hunter Killer") is a corporation organized and existing under the laws of the State of Nevada.

7.     Hunter Killer is the owner of the copyright for the motion picture in the Work "*Hunter Killer*", (hereafter: the "Work") a major motion picture released in 2018.

8.     The Work is an action movie starring Gerard Butler, Gary Oldman, Common, and Linda Cardellini.  The Work tells the story of American submarine Captain Joe Glass on the hunt for a U.S. submarine in distress when he discovers a secret Russian coup which threatens to dismantle the world order.

### B.  The Defendants

9.     The Defendants GERARD GALIOS and JOHN QUIROZ are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".   The Defendant JOHN DOE orchestrated the swarm.  The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is: SHA1: E68B6D05D90B8EFC43798955727F4350999B7949 (the "Unique Hash Number").   The file name is Hunter Killer.2018.HC.1080p.HDRip.X264-EVO[TGx].

20-017D

10.     Upon information and belief, Defendant GERARD GALIOS is an adult male over 21 years of age and a resident of Honolulu County.

11.     GERARD GALIOS is the Verizon subscriber assigned the following five Internet Protocol (IP) addresses: (1) 174.239.0.199 on 2019-01-10 05:31:57; (2) 174.239.1.234 on 2019-01-09 08:42:58; (3) 174.239.1.61 on 2018-12-31 05:36:17; (4) 174.239.0.230 on 2018-12-29 02:26:03; and (5) 174.239.31.129 on 2018-12-22 16:07:14.

12.     Defendant GERARD GALIOS was confirmed consistently downloading, copying and/or sharing copies of the Work via the Unique Hash Number at the five IP addresses at least 31 times at or around the times the IP addresses were assigned to him.

13.     Upon information and belief, Defendant JOHN QUIROZ is an adult male over 21 years of age and a resident of Honolulu County.

14.     Defendant JOHN QUIROZ is the Verizon subscriber assigned the IP address 174.239.1.146 at 2019-01-07 21:26:37.

15.     Defendant JOHN QUIROZ was confirmed consistently downloading, copying and/or sharing a copy of the Work via the Unique Hash Number at the IP address at the time it was assigned to him.

16.     Upon information and belief, Defendants GERARD GALIOS and JOHN QUIROZ used a computer device connected to Verizon's cellular phone

4

20-017D

Internet service therefore it is highly unlikely a third party was able to obtain the consistent access for the observed activity through hacking or any other means to the accounts of Defendants GERARD GALIOS and JOHN QUIROZ.

17.    Defendant JOHN DOE provided the BitTorrent Client that was used by Defendant GERARD GALIOS available for download at an interactive website.

18.    Defendant JOHN DOE provided the BitTorrent Client that was used by Defendant JOHN QUIROZ available for download at the interactive website.

19.    Defendant JOHN DOE provides the BitTorrent Client with an easy to use Netflix-like interface and menu so that users including GERARD GALIOS and JOHN QUIROZ can quickly and easily download Copyright protected content.

20.    Defendant JOHN DOE provides the BitTorrent Client with the menu to include a search bar which automatically displays title art of motion pictures based upon the search terms entered by users including GERARD GALIOS and JOHN QUIROZ.

21.    Defendant JOHN DOE uploaded one such BitTorrent Client to a website platform dedicated for applications based upon the Android® operating system at June 23, 2018 at 00:47:02 UTC from IP address 100.18.26.232.

22.    Plaintiff alleges on information and belief that each of the Defendants named herein performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged herein, and are liable to Plaintiff

20-017D

for the damages and relief sought herein.

## IV.   JOINDER

23.    Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that the infringement complained of herein by each of the Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other; and there are common questions of law and fact.  Namely, each of Defendants GERARD GALIOS and JOHN QUIROZ used the BitTorrent Client provided by Defendant JOHN DOE.

## V.      FACTUAL BACKGROUND

### A. The Plaintiff Owns the Copyright to the Work

24.    The Plaintiff is the owner of the copyright for the motion picture for the Work entitled "*Hunter Killer*", a major motion picture released in 2018.

25.    The Work is the subject of copyright registration (Registration Number PA0002136168) for the motion picture, and this action is brought pursuant to 17 U.S.C. § 411.  *See,* Exhibit "2".

26.    The Work is a motion picture which contains original material that is copyrightable subject matter under the laws of the United States.

27.    The motion picture is currently offered for sale in commerce.

20-017D

28.     Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore a proper copyright notice.

29.     Defendants also had notice of Plaintiff's rights through general publication and advertising and more specifically as identified in the content of the motion picture, advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. Defendants Used BitTorrent To Infringe the Plaintiffs' Copyright

30.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

31.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendants GERARD GALIOS and JOHN QUIROZ installed a BitTorrent Client provided by Defendant JOHN DOE onto their Computer.

20-017D

32.     A BitTorrent "Client" is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

33.     Once installed on a computer, the BitTorrent "Client" serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

34.     Defendant JOHN DOE placed or more versions of a BitTorrent Client available for download at one or more websites.

35.     Defendant JOHN DOE placed or more versions of a BitTorrent Client available for download at one or more websites.

36.     Defendants GERARD GALIOS and JOHN QUIROZ installed or had installed the BitTorrent Client onto their respective computer.

### *2. The Initial Seed, Torrent, Hash and Tracker*

37.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using the Client he or she installed onto his or her computer.

38.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

39.     The Client then gives each one of the computer file's pieces, in this

20-017D

case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

40.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

41.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

42.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

43.     The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

44.     Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized

20-017D

tracking.)

### 3. Torrent Sites

45.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites.

46.    The BitTorrent Client of JOHN DOE includes a menu so that users including Defendants GERARD GALIOS and JOHN QUIROZ can automatically crawl the Torrent Sites to find available torrent files based upon search terms entered into the menu by the users.

47.    Upon information and belief, Defendant JOHN DOE connected Defendants GERARD GALIOS and JOHN QUIROZ via the BitTorrent Client to a torrent site to upload and download Plaintiff's copyrighted Work.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

48.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

49.    The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

20-017D

50.    Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

51.    In this way, all of the peers and seeders are working together in what is called a "swarm."

52.    Here, Defendants GERARD GALIOS and JOHN QUIROZ participated in the same swarm as orchestrated by Defendant JOHN DOE and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

53.    In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

54.    Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

**5.  *The Plaintiff's Computer Investigator Identified the Defendants***

20-017D

### *GERARD GALIOS's and JOHN QUIROZ's IP Addresses as Participants*
### *in a Swarm That Was Distributing the Plaintiff's Copyrighted Work*

55.    The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

56.    MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

57.    MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Numbers.

58.    The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "1" accurately reflect what is contained in the evidence logs, and show that Defendants GERARD GALIOS and JOHN QUIROZ have copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number.

59.    The computers of Defendants GERARD GALIOS and JOHN QUIROZ used the identified IP addresses to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

20-017D

60.    MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit 1 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

61.    MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

## VI. FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS

## GERARD GALIOS and JOHN QUIROZ

### (Copyright Infringement)

62.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

63.    Plaintiff is the copyright owner of the Work which contains an original work of authorship.

64.    By using the BitTorrent protocol and a BitTorrent Client and the processes described above, Defendants GERARD GALIOS and JOHN QUIROZ copied the constituent elements of the registered Work that is original.

65.    The Plaintiff did not authorize, permit, or provide consent to the Defendants GERARD GALIOS and JOHN QUIROZ to copy, reproduce, redistribute, perform, or display the Work.

66.    As a result of the foregoing, Defendants GERARD GALIOS and

20-017D

JOHN QUIROZ violated the Plaintiff's exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

67.     Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

68.     By engaging in the infringement alleged in this Complaint, the Defendants deprived not only the producers of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

69.     The Plaintiff has suffered damages that were proximately caused by

20-017D

the Defendants' copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VII. SECOND CLAIM FOR RELIEF AGAINST ALL DEFENDANTS
## (Contributory Copyright Infringement)

70.    Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

71.    By participating in the BitTorrent swarm with others, Defendants GERARD GALIOS and JOHN QUIROZ induced, caused or materially contributed to the infringing conduct of others.

72.    By providing the BitTorrent Client that orchestrated the activity of Defendants GERARD GALIOS and JOHN QUIROZ, Defendant JOHN DOE induced, caused or materially contributed to the infringing conduct of Defendants GERARD GALIOS and JOHN QUIROZ.

73.    Plaintiffs did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

74.    Defendants knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.  Indeed, Defendants directly participated in and therefore materially contributed to others'

infringing activities.

75.    The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

76.    By engaging in the contributory infringement alleged in this Complaint, the Defendants deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy.  The Defendants' misconduct therefore offends public policy.

77.    The Plaintiff has suffered damages that were proximately caused by the Defendants' contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) permanently enjoin Defendants from continuing to infringe and/or contribute to infringement of the Plaintiff's copyrighted Work;

(B) order that Defendants GERARD GALIOS and JOHN QUIROZ delete and permanently remove the torrent file relating to the Plaintiff's copyrighted Work from each of the computers under Defendant's possession, custody, or control;

(C) order that Defendants GERARD GALIOS and JOHN QUIROZ delete and

20-017D

permanently remove the copy of the Work Defendants have on the computers under the Defendants' possession, custody, or control;

(D) order that Defendant JOHN DOE cease promoting and distributing the BitTorrent Client for the purpose of infringing Copyright protected Works;

(E) award the Plaintiff either its actual damages and any additional profits of the Defendants pursuant to 17 U.S.C. § 504(a)-(b) or statutory damages per Defendant pursuant to 17 U.S.C. § 504-(a) and (c), whichever is greater;

(F) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(G) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

DATED: Kailua-Kona, Hawaii, June 25, 2019.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Plaintiff

20-017D